May it please the court, my name is Mike Wellenstein, and I'm an assistant attorney general for the state of Montana. I think you're the number two guy. Uh, who's the attorney general? He asked if you were the number two guy. No, I'm far down from the number two guy. You just got promoted. Alright, thank you judge. I'll let him know when my paycheck comes in. Under the Brecht Harmless Error Test, an error on habeas review is harmless unless the habeas petitioner establishes that the error had a substantial injurious influence or effect in determining the jury's verdict. Recently, the U.S. Supreme Court in Davis stated the habeas petitioner must show actual prejudice in order to be granted habeas relief. The Supreme Court in Davis also said that the habeas petitioner must show that there's more than a reasonable possibility that the error was harmful. In this case... So would you say, counselor, that the Brecht standard would be a tougher standard to meet than Chapman had put? For the habeas petitioner, yes, because he has the burden of proof under that standard and he has to show actual prejudice. And in this case, Mr. Rooks hasn't shown any actual prejudice because there's nothing in the record showing that the jury was swayed by the bailiff's comment, considered the bailiff's comment, or discussed the bailiff's comment during jury deliberations. Can I ask you a question? Yes. The bailiff made the comment, and what the record shows, all of the jurors heard that comment. Yes. And then the bailiff reported it to the clerk. Yes. Why didn't the clerk tell the judge? Tell the judge, the district court judge? Well, it was, I'm not sure, but it was a pretty short time frame because... Well, tell me about it. A minute went by, two minutes, three minutes. It's not in the record when the clerk told the district court judge, but considering that the judge had that hearing right after the jury returned its verdict... Well, that's not an issue. They already made their decision. Well, I don't think it's clear in the record when the judge actually got the information from the clerk. But the clerk had the duty, would you say, to inform the judge right away? Yes, depending on when the bailiff told the clerk of the comment. Well... Did she hear it? No, the clerk didn't hear it. The bailiff reported to the clerk that one of the jurors asked this question. That was right after the jury started delivering. Yes, that's when the question was asked to the bailiff, right when the jury was going to make the decision. You know, there's serious problems with bailiffs. You know that. Yes. They like to talk. They get very familiar with the jurors and the jury and their caution not to talk. And this judge did that, not to talk to the jury about anything substantive. And there was an out-and-out violation. And jurors will look to the bailiff as an officer in the court. They want to find out, I think, what does the bailiff think about this case, and what are his attitudes, and her attitude. So he violated the bailiff, violated the judge's order, and brought in the evidence that was arguably damaging to this decision. Now, as the judge would have known upon it, right away the judge could have called the jury back in and cautioned them to strike that information from their minds if they heard it and lectured to them for a minute or two, and they could have gone back in. But that didn't happen. So what are we going to do about that? I think the court … And the other thing is, here we are, going through all this work, and we have to go through all the breaks you have to get ready for. And what was it, a two-day trial? A two-day trial, yes, sir. Brought it down to one. Everybody was there. We're going to try the case again. Go ahead. I'm sorry, sir. There are a couple of facts that I think we also need to put out there. It is so that the jury acquitted defendants of two charges. Is that right? Yes, and that shows that the jury, it's an indication that the jury was not prejudiced by this comment. And the two charges were against different people in this defendant group. And there was very strong evidence with those charges also. And those charges were partner or family assault. Partner or family member assault. And assault. And simple assault, yes. Right, assault. And so there's no question the comment didn't play any part there, right? Yes, sir. I think it's important to … We don't know those things. And that's … We don't know whether the comment played any part or not. We don't know what went on in the jury room. No, it would be speculation. And that takes us back to the Breck test. Under Breck, it's Mr. Rooks' burden to show actual prejudice, not speculation. I'm not sure it was Mr. Rooks' burden. But let's just go forward about, were there jury instructions given that said, you can only review what is in the evidence, not the comments of others? Well, the jury was instructed by the court, and I think it's on page … Those initial instructions are on pages 123 to 126 of the transcript. And in those initial instructions, the court instructs the jury that they're to base their verdict on the evidence, what's presented in court, and to follow the court's instructions. So … The jury knew the defendant had been arrested, right? Yes, they had. And I think another important aspect of this harmless error question … Isn't it important they have a clean trial? And to keep officers of the court honored and to obey the rules? If we keep saying, well, you know, it's harmless, and almost to get away with almost anything, there's a lot of evidence that the probability is that it didn't make much difference. But we don't know. We don't know what it is that causes a jury to go what way or not. We don't know that. And they did impose a severe penalty. And if we don't … They did impose it 20 years ago. With Tent suspended and … He's out now. He was out on parole, I don't know, a couple of years ago, and I might be right or wrong on that, but he's released now. But that gets back to the whole burden of proof under Brecht. The Supreme Court says the error can't be based on speculation, and there has to be more than a reasonable possibility of harm. And what we've discussed here and what the federal district court has discussed in his order is speculation. The federal district court says no one knows to what extent the jury discussed or considered the error. The federal district court also speculates. Well, what do you do about an officer of the court that disobeys the court and then has an effect on the jury? Because it has to have an effect on the jury. Well, you know … The judge wouldn't tell a bailiff to stay out of it. I think so. I think you have to look at the type of response in the bailiff. I think there's some cases where there's obviously a deliberate sort of case such as Maddox where a bailiff said, this is the third person the defendant killed, or Parker where they say the defendant's a wicked fellow, he's guilty, and don't worry about it. If they make a mistake, the Supreme Court can clear it up. Now, there's a deliberate interference there, and that's not the case here. I see my time is running up. Yes. Anyway, I'm probably short on a stick. Well, I was a trial judge for many, many, many years, and I did everything I could to see that the rules were followed. I've been over Maccas to see that the defendants got a fair trial. Yes. And, you know, you can search the appellate records of this court, and I think you'll only find one case that I was ever involved in in a criminal matter that even went up on appeal. Yes. They got a fair trial. They got what they wanted. They got convicted. I think the bailiff in this case, yes. I don't think he got a fair trial. I guess I'd have to disagree with you, Judge. You know, and I think it's important not only to look at what the comment was. It wasn't this deliberate interference with the jury's decision-making process, but the fact that most jurors would expect there to be some type of guard watching over a defendant during a criminal trial. I mean, as U.S. Supreme Court in Holbrook said, it's not inherently prejudicial for an armed and uniformed officer to be sitting directly behind a defendant. All he had to do was follow the judge's instruction and keep his mouth shut. It's just very simple. That's all right. We don't want to belabor it. Okay. Well, if there's no further questions, I assume my time is up. Thank you. Thank you, Counsel. You did a good job. You understand what we're doing. Thank you, Your Honor. Thank you. Good morning, and may it please the Court, the bailiff's comment here undermined the presumption of innocence as well as the fairness of the jury deliberations. Mr. Rooks was branded by that comment.  Holbrook v. Flynn, we do not minimize the threat that a room full of uniformed and armed policemen might pose to a defendant's chance of receiving a fair trial, but we simply cannot find an acceptable risk of prejudice in the spectacle of four such officers sitting quietly in the first row of the courtroom's spectator section. I would argue. That's the Supreme Court of the United States. That's correct, Your Honor. I would argue. So how can we suggest what you're saying? Because in this situation, if there were uniformed officers, it really wouldn't have mattered. But in this situation, there was an ununiformed officer who nobody knew about. So? And the case basically. It seems to me that if, in fact, uniformed and armed guards behind the defendant isn't inherently prejudicial, it seems tough to suggest that an unarmed, a nonuniformed guard sitting there is somehow prejudicial. It only became prejudicial when the bailiff informed the jury who he was. So? And then the jury knew that Mr. Rooks was a person who was potentially dangerous and needed to have a guard. And at that time, the jury was just. . . How did they know that? How did they know it wasn't just Rooks's own guard? Rooks's own guard? Yeah. How did they know he didn't have a guard of his own? Well. . . How did they know that he wasn't just a guy from the jail where he'd been arrested and he was just sitting beside him? Well, we don't know that. All right. So then if we read Brecht, Brecht says it requires more than a reasonable possibility that the statement affected the jury's verdict. And then I read Holbrook, and I read you the very statement from Holbrook that the Supreme Court suggested. And I'm having a tough time figuring out how I can do what the district court did. Did not do, sorry. Or what you want them to do. The district court speaks better than I do in this situation. Do I owe the district court any deference? As to factual findings, yes, Your Honor. There was no factual finding here. All we're talking about is the statutory elements of the substantive offense. And I'm a district court judge. I'm not nearly as respected and as good as the guy got sitting to my left. To whom I owe great deference. But I will say this. But I will say this. I'm having a tough time understanding your argument given Holbrook, given what's got to be proven in Brecht, given that I don't owe the district court any deference on a legal conclusion. That's correct. So, then I say, how do I get where you're going? First off, I think the district court already made a finding, I believe, of actual prejudice. And he did say during the trial. He didn't ever say actual prejudice. He didn't use the word actual prejudice, but he did a prejudice analysis referring to the fields court where he discussed nine issues. And he came to the conclusion that there was substantial prejudice. Why did he have to even apply that test, Counselor? I don't know that it even applies here. Well, I don't know why you have to or why you did. But I think to get a feeling. Well, I guess tell me why he should have even done that test. It doesn't seem to me that this is anything like that test would outline we ought to do. It isn't even applicable in this situation. I think it's useful, even though the situation feels it's different, to discuss various factors. It's useful to apply a case that we don't even have that isn't even applicable to the case. It isn't even applicable to the situation. Well, we're on harmless error here. And we're on Brecht. And I don't even know why that he applied the standard he did. I don't even see how it applies in this situation. You've got to tell me why it does in order to go in. Well, getting back to the test, I do think that, considering when the statement was given right at the start of the deliberations, who was given by an officer of the court, all those factors were factors that the district judge correctly, I think, considered in determining whether there was prejudice. And he did say that he put the burden on Mr. Rooks. He said that twice during the oral argument we had in district court. He said it twice. He was putting the burden on Mr. Rooks. So I think he was. Well, but at that point it wasn't a matter. He was just trying to determine this determination on what had been said, who had the burden or not, even if he's right or he's wrong. And I'm not trying to get there. I'm just trying to say let's not give Rooks the burden. Let's give the government the burden. What evidence do I have that there is more than a reasonable possibility that the statement affected the jury's verdict? It goes into the deliberations on the question of whether this is a felony assault or a misdemeanor assault and who to believe. They acquitted two assault charges. This is a totally different case than those. I mean, here we had a guy who had held a lady down, wrestled with her, left red marks on her neck that were fresh. We had photos of it. We had all this stuff extra. She came in and said how bad he was. He came in, admitted it. They had the police officer come in. That's a totally different case than those other two people. That's right. And the issue in that case depended on him against her because they were the only ones that were present. Him against her with the photos, with what he said, with the marks? Him against her? As far as the felony goes, Your Honor, there's no question. I'm not arguing there wasn't an assault on his wife. The question is whether that was a felony, whether she felt reasonable apprehension of serious violent injury or death, and whether he knowingly intended to cause that fear in her. That's what the issue turned on, and that's why this statement by the bailiff at the time was given was very important and casts a bad light, a bad character, so to speak, on Mr. Rooks at the time. The jury was starting their deliberations. Counsel, if I could ask you your position on whether the Montana Supreme Court reviewed this for harmless error. I don't think they did. On the first time up to Montana Supreme Court, there was an Anders brief filed by the appellate defender, so they really didn't reach harmless error. What about on the second time up? They talked about prejudice the second time, but I don't think they reached harmless error. And the district court judge here basically criticized the Montana Supreme Court for using the wrong standard, and I think the state conceded that during our whole argument in the district court. So the district court here said, I'm looking at this with a blank slate and starting over and making my finds accordingly without being bound by what the Montana Supreme Court decided. So it's your position then when the Montana Supreme Court said, we agreed that the record did not demonstrate any prejudice resulting from the bailiff's misconduct, that we do not owe that statement any deference? I'd say no, probably because there was really no prejudicial argument. It was just a conclusory statement made to the court. There wasn't any analysis of the kind that's been done here in the district court and the district court's approaching the case right now. And if I could ask, Counsel, there's another line of cases involving criminal defendants who are shackled during trial. And the jurors sometimes can see the fact that a defendant is shackled. And in those cases, sometimes they're reversed, sometimes they're affirmed the convictions. But in the cases that we were able to locate, the burden has been placed on the defendant, in this case the petitioner, to show that, in fact, it was harmful, as opposed to being on the government to prove harmless. What would your argument be as to why, assuming my reading of those cases is correct, why those cases would not influence our decision here? Well, when this court came out with an order last week to examine the Ayala Davis case, about the burden of proof, I spent I know countless hours reading that. But it seemed to me that harmless error is the opposite of the Brecht standard of substantial injury. And I think it's said by the dissent in Davis, in Ayala Davis, that if a court finds a Brecht violation substantial injury, then that necessarily means that there's no harmless error. I mean, on one side we say that if the petitioner succeeds, there's a substantial and injurious effect. On the other side, he doesn't succeed if there's harmless error. I think by proving the creditors, which is what's required, he's basically disproving harmless error. And the state comes back and says, hey, wait a minute, there is harmless error. And that's what the state's trying to do now, and that's the point of their brief, is that there's harmless error here. And maybe the last point I'd like to make, I'm running out of time here. The Ayala case does point out that if this court's in grave doubt as to whether there is harmless error, then the grave doubt goes to the side of the petitioner, Mr. Rooks. That's all I have. Thank you. Thank you. Thank you, Counsel. I'll just make a quick point. No matter how we view this burden of proof, the bottom line is that Brett Carpenter's standard hasn't been met here. You have acquittal of two charges. You have overwhelming evidence on the aggravated assault charge against Mr. Brooks, in large part from his testimony. You have jurors that are commonplace in most criminal trials. You have the U.S. Supreme Court saying it's inherently prejudicial for an armed guard to be behind a defendant. All these add up to the harmlessness of this bailiff's comment under the Breck standard. Thank you. See, the problem with all of that is that with the harmlessness of the error rule, one of these days I think we're going to get rid of it. As the judge said, harmless error is the last refuge to the scoffer. Okay. That's where it is. I've got a friend over here. If I ever get in trouble, I've already retained him to be my lawyer. Amen. Well, thank you for letting me argue today. Okay, thanks.
judges: Pregerson, Smith, Owens